Filed 4/14/15  P. v. Ramirez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JESUS RAMIREZ,<br><br>Defendant and Appellant. | F067581<br><br>(Tulare Super. Ct. No. VCF268934)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Brett R. Alldredge, Judge.

Hilda Scheib, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Jamie A. Scheidegger, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Appellant/defendant Jesus Ramirez was convicted of multiple felonies for the sexual molestation of C.G., his brother's stepdaughter, when she was between the ages of five and 11 years old. He was sentenced to 25 years to life plus 24 years.

On appeal, defendant argues there is insufficient evidence to support several of the convictions based on the manner the People pleaded and proved the offenses. We reverse defendant's conviction for one count and the eight-year term imposed, and otherwise affirm.

## FACTS

Defendant lived with his brother's family in Dinuba for several years. C.G. (born 1996) was his brother's stepdaughter. In 2013, C.G. was 16 years old when she testified in this case that defendant sexually molested her when she was a child.

### The Swimsuit Incident (Count I)

C.G. testified she was five or six years old when defendant molested her for the first time. Defendant entered her bedroom while she was changing into a swimsuit. Defendant pulled down her swim trunks. C.G. told him to stop but he did not. Defendant put his penis in her "butt," and it hurt.

C.G. testified that defendant "put his penis in [her] butt" approximately 20 times between the time she was five or six years old to when she was nine or 10 years old. These molestations occurred in the various houses where the family lived during that period. No one else was present when these incidents happened.[1]

_____

[1] On cross-examination, C.G. was impeached with her prior statement to the police that defendant sodomized her one time; she did not tell the police that it happened 20 times.

2.

Defendant was charged and convicted of count I, commission of a forcible lewd act upon a child under the age of 14 years (Pen. Code, § 288, subd. (b)(1))[2], committed between June 24, 2001, and June 23, 2003.

**The Nighttime Incident (Counts II, III, and IV)**

C.G. testified about another incident which occurred when she was 10 years old and in the fourth grade. The incident happened at night in the family house. Her parents were at a wrestling match, and her grandmother and sister were asleep in another room.

C.G. testified she was asleep in her bedroom, the lights were off, and she was lying on her stomach. No one else was in her room when she went to sleep. However, she felt someone turn her over onto her back. She woke up and saw defendant. Defendant pulled off her pajamas and lowered his pants. C.G. told defendant to stop, but he did not say anything to her. Defendant put his penis in her vagina. C.G. started to yell and defendant covered her mouth with his hand. Defendant moved up and down at least three times. C.G. testified defendant was "forceful," and it hurt. When defendant finally stopped, C.G. went into the bathroom and found blood in her underwear.

Based on C.G.'s testimony about this incident, defendant was charged with committing three offenses between March 1 and June 23, 2007: Count II, sexual intercourse with a child 10 years of age or younger (§ 288.7, subd. (a)); and counts III and IV, committing a forcible lewd act on a child under 14 years (§ 288, subd. (b)(1)).[3] The information alleged that count III was based on "penis to vagina," and count IV was based on "hand to mouth."

---

[2] All further statutory citations are to the Penal Code unless otherwise indicated.

[3] The offense of committing a lewd or lascivious act by force or duress upon a child 14 years of age or younger, in violation of section 288, subdivision (b)(1), is also described as "aggravated lewd conduct" or committing a "forcible lewd act." (See, e.g., *People v. Soto* (2011) 51 Cal.4th 229, 242, 248; *People v. Griffin* (2004) 33 Cal.4th 1015, 1018–1019; *People v. Perez* (2013) 214 Cal.App.4th 49, 54.)

Defendant was convicted as charged in counts II and III. As to count IV, he was found not guilty of the charged offense of committing a forcible lewd act in count IV, based on putting his hand over her mouth, but convicted of the lesser included offense of committing a lewd act upon a child under the age of 14 years without force (§ 288, subd. (a)).[4]

## The Homework Incident (Counts V and VI)

C.G. testified about another incident which occurred in the family house when she was 11 years old. It happened when she was in her bedroom in the daytime. C.G. was lying on her stomach on her bedroom floor and doing her homework. No one else was home. Defendant walked in, grabbed her bottom, and started to pull down her pants. C.G. told him to stop or she would tell her parents. Defendant said he would kill her family if she told anyone. C.G. became frightened. Defendant pulled down her pants and put his penis in her vagina. C.G. testified he was "very aggressive," and it hurt.

Based on this incident, defendant was charged and convicted of counts V and VI, committing a forcible lewd act on a child under 14 years (§ 288, subd. (b)(1)), between June 24, 2007, and June 23, 2008. The information alleged count V was based on "hand to buttocks"; and count VI was based on "penis to vagina."[5]

## C.G. Discloses the Molestations

C.G. testified she did not tell anyone that defendant was molesting her at that time because she was scared "he would do something."

---

[4] In issue I, *post*, we will address defendant's argument that his conviction in count IV for committing a lewd act by putting his hand over C.G.'s mouth must be reversed for insufficient evidence of sexual gratification. In issue III, *post*, we will address defendant's argument that his conviction in count II for sexual intercourse must be reversed for inconsistencies between the information, the trial evidence, and the instructions.

[5] In issue II, *post*, we will address defendant's claim that his conviction in count V must be reversed because of insufficient evidence of force and sexual gratification when he grabbed C.G.'s buttocks.

4.

When she was 13 years old, C.G. told her sister, C.R., what happened in detail.

C.G. testified that when she was 15 years old, she was ditching school, and her mother was going to take her to the doctor. She decided to tell her mother that defendant had molested her "because I knew there was going to be scarring. I didn't want her to find [out] that way."

## C.G.'s Statement to the Police

On June 5, 2012, C.G.'s mother contacted the Dinuba Police Department.

On June 6, 2012, Detective Jorge Quintero interviewed C.G., who said she thought he was there to talk about "her rape," in the singular. C.G. talked about one molestation, which happened when she was home with her grandmother, and said it was the "first" time. She said she was 10 years old when defendant put his penis in her vagina for the first time. She said defendant put his hand over her mouth to prevent her from screaming and said defendant never touched her body with his hands. C.G. said her parents were at a wrestling match that night, and her grandmother and younger sister were sleeping in another room when the first incident happened.

Detective Quintero asked whether there was a second incident. C.G. said yes, and that the second incident happened when she was 11 years old. C.G. said she had come home from school and was doing her homework. Defendant again put his penis in her vagina. C.G. said her mother and older siblings had gone to Visalia that day, and the younger children were swimming outside.

Detective Quintero asked C.G. whether there was another incident. C.G. said there was a "third" time when defendant put his penis in her "butt" when she was five or six years old. Quintero did not ask C.G. how many times he sodomized her, and she did not mention any additional incidents. C.G. said defendant told her not to tell anyone about the incidents.

## Defendant's Postarrest Statement

On June 7, 2012, Detective Quintero arrested defendant. Quintero conducted an interview in Spanish at the police department. Defendant was advised of and waived his constitutional rights. Defendant said he was a field laborer. Defendant never acted confused or indicated he did not understand Quintero's questions.

Detective Quintero asked defendant if he knew why he was there. Defendant thought it was about traffic tickets. Quintero said something specific happened when he was living with his relatives. Defendant said he used to live with his brother's family. Defendant thought it was about the time he disciplined his nephews by hitting them. Quintero said no.

Detective Quintero asked defendant about his nieces and said they were accusing him of something. Defendant asked if they accused him of hitting them. Quintero said no, it was something different. Defendant said he had no idea. Quintero said it was about one little girl and asked what happened. Defendant said nothing happened.

Detective Quintero told defendant he did something to one of the little girls, and asked if he touched one of them. Quintero said he knew it happened three times, and asked defendant what he had to say about it. Defendant asked if he meant that he groped her. Quintero replied that "sexual abuse" was the word for what happened. Defendant again said nothing happened.

Detective Quintero asked defendant to "think about what happened" with C.G. Defendant said other people lived at the house. Quintero said there was more that happened. Defendant said: " 'Well I just gave her a kiss on the mouth and that is all.' " Quintero told him to tell the truth and give the details.

Defendant said he only kissed C.G. on the mouth, and his "hand might have slipped." Detective Quintero asked for more details. Defendant said when C.G. was 10 years old, she wanted defendant to kiss her, and he did. Defendant said that C.G. asked him into her bedroom. She locked the door, pulled defendant toward her, and grabbed his

6.

penis. Defendant said he went along with C.G.'s advances, and he put his penis in her vagina. Defendant said he ejaculated on the floor. Quintero asked if there was any blood. Defendant said C.G. went into the bathroom, and he became scared when he noticed she was bleeding.

Defendant also said he kissed C.G.'s "butt cheeks" four times, and kissed her vagina five times. Defendant claimed he put his penis in her vagina only once. However, defendant remembered that he also put his penis in her vagina on two separate occasions when she was eight or nine years old.

Detective Quintero asked defendant if he placed his penis in her "butt" when C.G. was five or six years old. Defendant said she was eight or nine years old "when it occurred." Quintero asked how many times that happened. Defendant initially said it happened eight or nine times. As the interview continued, defendant clarified it happened twice.

Detective Quintero asked defendant if he placed his fingers inside her body. Defendant said no. Quintero asked defendant if he touched C.G.'s sister, C.R., or any other children. Defendant said no.

Defendant said he "chose" C.G. because she was "flirtatious" when she was 10 years old, and she "played a lot and [he] described that she would jump on him and climb all over him…." Detective Quintero asked defendant if he knew it was a crime for a man to have sex with a little girl that age. Defendant said he knew it was wrong, and it was a crime. Quintero asked how he felt about it. Defendant said he was regretful.

**C.G.'s Relationship with Defendant's Brother**

C.G. testified she was interviewed by the police in early June 2012, and she disclosed defendant's molestations. On cross-examination, C.G. admitted that later in June 2012, she began an intimate relationship with R.R., defendant's other brother, who was 19 or 20 years old. She was 15 years old when she started the relationship. C.G. testified that she was not involved with R.R. when she was ditching school, when she told

her mother about defendant's molestations, or when she gave her statement about defendant to the police. C.G. admitted she hid her relationship with R.R. from her family, and she did not want them to know about it. Her family eventually learned about the relationship when her sister found out.

**Convictions and Sentences**

After a jury trial, defendant was convicted of count II, sexual intercourse with a child 10 years of age or younger (§ 288.7, subd. (a)); counts I, III, V, and VI, committing forcible lewd acts on a child under the age of 14 years (§ 288, subd. (b); and as to count IV, committing a lewd act upon a child under the age of 14 years without force, as a lesser included offense (§ 288, subd. (a)). As to counts I, III, and VI, the jury found defendant committed substantial sexual conduct with a victim under the age of 14 years (§ 1203.66, subd. (a)(8)).

Defendant was sentenced to an aggregate term of 25 years to life plus 24 years. As to count II, sexual intercourse with a child 10 years of age or younger, he was sentenced to 25 years to life. The court also imposed fully consecutive upper terms of eight years for the lesser included offense for count IV, commission of a lewd act without force (hand to mouth during the nighttime incident); count I, forcible lewd act (sodomy during the swimsuit incident); and count V, forcible lewd act (hand to buttocks during the homework incident).

The court stayed the terms imposed for forcible lewd acts based on intercourse in count III (the nighttime incident) and count VI (the homework incident).

## DISCUSSION

### I. Insufficient Evidence for Count IV

C.G. testified that during the nighttime incident in her bedroom, defendant placed his hand over her mouth and performed an act of intercourse. Defendant was charged with two counts of committing a forcible lewd act in violation of section 288, subdivision (b). In count III, the information alleged a forcible lewd act based on "penis to vagina,"

8.

and count IV alleged a forcible lewd act based on "hand to mouth." He was convicted of count III.

As to count IV, he was found not guilty of committing a forcible lewd act based on "hand to mouth," but instead he was convicted of the lesser included offense of committing a lewd act *without force* on a child under the age of 14 years in violation of section 288, subdivision (a).

On appeal, defendant contends his conviction for the lesser offense in count IV of committing a lewd act without force must be reversed because there is no evidence of sexual gratification when he placed his hand over C.G.'s mouth, he placed his hand over her mouth to muffle her screams for help as he committed the act of intercourse, and his conduct constituted the force necessary to support his conviction in *count III* for committing a forcible lewd act based on "penis to vagina," instead of supporting a *separate* conviction for lewd conduct without force.

## A. **Substantial Evidence**

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

"The standard of appellate review is the same in cases in which the People rely primarily on circumstantial evidence. [Citation.] Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. ' "If the circumstances reasonably justify the trier of fact's findings,

9.

the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citations.] 'Circumstantial evidence may be sufficient to connect a defendant with the crime and to prove [her] guilt beyond a reasonable doubt.' [Citation.]" (*People v. Bean* (1988) 46 Cal.3d 919, 932933; *People v. Stanley* (1995) 10 Cal.4th 764, 792–793.)

## B. Section 288

In order to address defendant's contentions, we must examine section 288, which defined both the greater offense for which he was charged in counts III and IV, and the lesser offense of which he was convicted in count IV.

Section 288, subdivision (a) proscribes the willful and lewd commission of "any lewd or lascivious act … upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, *with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child*." (Italics added.) Section 288, subdivision (b) proscribes aggravated lewd conduct, which is the commission of an act described in subdivision (a) "by use of *force*, violence, *duress*, menace, or fear of immediate and unlawful bodily injury on the victim or another person." (Italics added.)

Both subdivisions (a) and (b) of section 288 "prohibit[] *all* forms of sexually motivated contact with an underage child." (*People v. Martinez* (1995) 11 Cal.4th 434, 444 (*Martinez*), italics in original.) "[A]ny touching of a child under the age of 14 is a felony offense 'even if the touching is outwardly innocuous and inoffensive, if it is accompanied by the *intent* to arouse or gratify the sexual desires of either the perpetrator or the victim.' [Citations.]" (*In re R.C.* (2011) 196 Cal.App.4th 741, 749, italics in original.)

"[A] lewd or lascivious act can occur through the victim's clothing and can involve 'any part' of the victim's body. [Citations.]" (*Martinez*, *supra*, 11 Cal.4th at p. 444.) "Touching of a sexual organ is not required. [Citation.]" (*People v. Raley* (1992) 2 Cal.4th 870, 907; *People v. Diaz* (1996) 41 Cal.App.4th 1424, 1427.)

"[T]he statute is violated if '*any* part … of a child …' is lewdly touched. Accordingly, all of the following 'touchings' HAVE BEEN FOUND LEWD: putting a hand inside a seven-year-old's pants and rubbing her stomach (*People v. Dontanville* (1970) 10 Cal.App.3d 783 …); hugging a seven-year-old with one's hands on the inside of her thighs (*People v. Self* (1993) 12 Cal.App.4th 1222 …); ordering a child to pull down her pants (*People v. Austin* (1980) 111 Cal.App.3d 110 …); compelling a child to disrobe (*People v. Mickle* (1991) 54 Cal.3d 140, 175–176 …); having a five-year-old touch the fully clothed defendant between his legs (*People v. Gaglione* (1994) 26 Cal.App.4th 1291 …); while standing by a backyard fence, 'dangling' the hair and rubbing the back of a nine to ten-year-old victim (*People v. Sharp* (1994) 29 Cal.App.4th 1772, 1789–1791 …); rubbing the stomach, back, and thigh of the victim (*People v. Gilbert* (1992) 5 Cal.App.4th 1372, 1380 …); kissing and rubbing the leg of a twelve-year-old girl (*People v. Hobbs* (1952) 109 Cal.App.2d 189, 190–192 …) …." (*People v. Diaz, supra*, 41 Cal.App.4th at p. 1428, italics in original.)

" '[T]he purpose of the perpetrator in touching the child is the controlling factor and each case is to be examined in the light of the intent with which the act was done.... If [the] intent of the act, *although it may have the outward appearance of innocence,* is to arouse ... the lust, the passion or the sexual desire of the perpetrator [or the child,] it stands condemned by the statute ....' [Citation.]" (*Martinez, supra*, 11 Cal.4th at p. 444, italics in original.)

"To determine whether a defendant acted with sexual intent, all the circumstances are examined. Relevant factors include the nature and manner of the touching, the defendant's extrajudicial statements, the relationship of the parties and 'any coercion, bribery, or deceit used to obtain the victim's cooperation or avoid detection.' [Citation.]" *In re R.C.*, *supra*, 196 Cal.App.4th at p. 750.) "The trier of fact must find a union of act and sexual intent (see § 20), and such intent must be inferred from all the circumstances beyond a reasonable doubt. A touching which might appear sexual in context because of the identity of the perpetrator, the nature of the touching, or the absence of an innocent explanation, is more likely to produce a finding that the act was indeed committed for a sexual purpose and constituted a violation of the statute. On the other hand, if the trier of

11.

fact *is* persuaded beyond a reasonable doubt, from all the circumstances, that the touching of a child *was* sexually motivated, nothing in the language, history, or purpose of section 288 indicates that the touching should escape punishment simply because it might not be considered a means of sexual gratification by members of the mainstream population." (*Martinez*, *supra*, 11 Cal.4th at p. 452, italics in original.)

## C. **Aggravated Lewd Conduct and Force**

The Legislature has mandated additional penal consequences for the commission of aggravated lewd conduct in violation of section 288, subdivision (b). (*People v. Soto*, *supra*, 51 Cal.4th at p. 233.) The prosecution must prove defendant committed a lewd or lascivious act as defined in subdivision (a) "*by use of force*, violence, *duress*, menace, or fear of immediate and unlawful bodily injury on the victim or another person." (§ 288, subd. (b), italics added.)

"Force" in this context means physical force that is " 'substantially different from or substantially greater than that necessary to accomplish the lewd act itself.' [Citation.]" (*People v. Soto*, *supra*, 51 Cal.4th at p. 242; *People v. Alvarez* (2009) 178 Cal.App.4th 999, 1004.) "[A] 'defendant may fondle a child's genitals without having to grab the child by the arm and hold the crying victim in order to accomplish the act. Likewise, an assailant may achieve oral copulation without having to grab the victim's head to prevent the victim from resisting.' [Citation.] *Lewd conduct of this sort is punishable in and of itself.* (§ 288, subd. (a).) Therefore, it stands to reason that the force requirement will be deemed satisfied when the defendant uses any force that is 'different from and in excess of the type of force which is used in accomplishing similar lewd acts with a victim's consent.' [Citation.]" (*People v. Alvarez*, *supra*, at pp. 1004–1005, italics added.)

As relevant to this case, in *People v. Gilbert*, *supra*, 5 Cal.App.4th 1372, the defendant placed his arm over the victim's mouth to prevent her from crying out as he sexually molested her and pushed her back when she tried to move. (*Id*. at p. 1379.) *Gilbert* held there was substantial evidence to support the element of force for a violation

of section 288, subdivision (b): "It was not necessary to accomplishment of the described sexual acts that [the victim] be prevented from moving *or from crying out.* [Defendant's] described acts therefore exceeded any force necessary to the acts." (*Id*. at p. 1381.) In *People v. Cardenas* (1994) 21 Cal.App.4th 927, the court similarly found substantial evidence of force where defendant directed others to hold down the victim and used a pillow to muffle her screams as she was sexually molested. (*Id*. at p. 940.)

### D. C.G.'s Testimony

As to the nighttime molestation which was the basis for counts III and IV, C.G. testified defendant entered her bedroom, turned her on her back, lowered her clothes, and placed his penis in her vagina.

> "Q. What happened after that?
>
> "A. *I was going, I started yelling and he covered my mouth.*
>
> "Q. *You started to yell and the defendant covered your mouth*?
>
> "A. *Yeah.*
>
> "Q. What did the defendant cover your mouth with?
>
> "A. With his hand.
>
> "Q. After the defendant covered your mouth with his hand what did he do next?
>
> "A. He started moving up and down."

C.G. testified defendant continued to sexually assault her as he muffled her screams.

As noted above, the information alleged that count III was based on "penis to vagina" and count IV was based on "hand to mouth." In closing argument, the prosecutor similarly asserted that count III was based on the act of intercourse, and count IV "covers" the "situation … when the defendant grabbed [C.G.] and he put his hand on her mouth, he covered her mouth."

### E. Analysis

We agree with defendant that there is insufficient evidence to support his conviction in count IV for the lesser included offense of committing a lewd act without

13.

force in violation of section 288, subdivision (a), based on placing his hand over C.G.'s mouth. As explained above, a conviction for violating section 288, subdivision (a) may be based on the perpetrator's act of touching any part of the victim's body, even if outwardly innocuous and inoffensive. However, that touching must be "accompanied by the *intent* to arouse or gratify the sexual desires of either the perpetrator or the victim.' [Citation.]" (*In re R.C.*, *supra*, 196 Cal.App.4th at p. 749, italics in original.)

It is sadly conceivable that a perpetrator may place his hand over a child's mouth for the purposes of sexual gratification. Based on the record before this court, however, there is no evidence of sexual intent or gratification relating to the act of placing a hand over the child's mouth (though that act did constitute force that is an element of the crime charged in count III). C.G. testified defendant placed his hand over her mouth to prevent her from screaming as he committed the act of intercourse; she made the identical statement to Detective Quintero. There is no evidence that defendant placed his hand over her mouth as a separate act of sexual gratification.

Instead, as in *Gilbert* and *Cardenas*, defendant's act of placing his hand over C.G.'s mouth to prevent her from screaming constituted the force required for his conviction in *count III* for aggravated lewd conduct based on the act of intercourse. However, defendant was *separately charged* in *count IV* with committing a forcible lewd act based on the same act of placing his hand over her mouth. While he was convicted of the lesser offense of committing a lewd act without force, there must still be evidence of sexual intent to support that conviction, and such evidence is absent from this record.

The People assert there is substantial evidence of sexual intent for count IV. In making this argument, however, the People cite the evidence in support of *count III* for committing a forcible lewd act based on intercourse:

> "C.G. testified that when she was 10 years old, [defendant] came into her bedroom while she was sleeping and turned her over onto her back. When [defendant] began pulling her pants down, C.G. told him to stop. Instead, [defendant] forcefully put his penis in C.G.'s vagina. C.G. began to yell

14.

and [defendant] put his hand over her mouth while he continued to penetrate her vagina."

The People further assert the information's clarification that count IV was based on "hand to mouth" was not material, it did not refer "to the intent required for a violation, but instead sought to distinguish this sex act [of intercourse] from the others [defendant] committed against C.G." The People further assert the "gist" of defendant's challenge to count IV is not based whether his conviction for the lesser included offense is supported by substantial evidence, but whether there was a pleading variance between the allegations in the information and the trial evidence. The People cite to the preliminary hearing transcript to demonstrate that defendant was notified as to the nature of the charge and there was no miscarriage of justice. The People declare defendant has waived any error arising from his conviction in count IV because he never moved to dismiss the count.

The People's arguments are unpersuasive. In reviewing a conviction for substantial evidence, this court does not rely on the preliminary hearing transcript. Defendant was charged in count IV with committing a forcible lewd act specifically based on placing his hand over C.G.'s mouth. It was entirely possible the trial evidence would show a separate act of sexual gratification, with or without force, based on that act. However, C.G. testified that he put his hand over her mouth to muffle her cries for help as he raped her, thus establishing the force required to prove count III, which was specifically alleged as "penis to vagina." There is no evidence that he placed his hand on her mouth for a separate act of sexual gratification to support his conviction for the lesser offense of committing a lewd act without force. Moreover, defendant has not "waived" a substantial evidence challenge to his conviction based on the trial record.

We are thus compelled to reverse defendant's conviction and eight-year term for the lesser offense of committing a lewd act in violation of section 288, subdivision (a), based on the People's election of "hand over mouth," because there is insufficient

15.

evidence that he performed that specific act with the intent " 'to arouse ... the lust, the passion or the sexual desire of the perpetrator .…' [Citation.]" (*Martinez*, *supra*, 11 Cal.4th at p. 444.)

## II. Substantial Evidence for Count V

C.G. testified defendant molested her during another incident when he entered her bedroom while she was doing her homework, grabbed her buttocks, lowered her pants, and performed an act of intercourse. Based on this incident, defendant was charged with counts V and VI, commission of a forcible lewd act upon a child under 14 years (§ 288, subd. (b)(1)). The information alleged that count V was based on "hand to buttocks" and count VI was based on "penis to vagina." Defendant was convicted of both counts.

Defendant contends his conviction for committing a forcible lewd act in count V, based on "hand to buttocks," must be reversed for insufficient evidence because he did not have any sexual intent when he touched her buttocks, and that touching was part of the force required to prove count VI, when he subsequently performed the act of intercourse during the same incident.

We have already addressed the relevant legal principles in section I, *ante*. We turn to C.G.'s testimony about the "homework" molestation.

### A.  C.G.'s Testimony

C.G. testified the incident which was the basis for counts V and VI occurred when she was doing homework in her bedroom and no one else was home.

"Q.  What happened next?

"A.  I was doing my homework on the floor on my stomach and I felt the defendant *pull me up from my hips*.

"Q.  *So did he grab your bottom*?

"A.  *Yeah*.

"Q.  So did he do this while you were laying on the floor doing your homework?

16.

"A.     Yeah.

"Q.     And did he pick you up?

"A.     No.

"Q.     *What did he do after he grabbed you by the bottom*?

"A.     *He started to pull my pants down again*.

"Q.     He grabbed you by the bottom, was it with his hands?

"A.     Yeah.  [¶] … [¶]

"Q.     After he started pulling down your pants this time did you say anything to him?

"A.     Yeah, I told him to stop or I was going to tell my mom and dad.

"Q.     And then what did the defendant do next?

"A.     And then he said if I did he would kill my whole family.

"Q.     Were you afraid?

"A.     Yeah."  (Italics added.)

C.G. testified that after defendant made the threats, he performed the act of intercourse.

As noted above, defendant was charged with two counts of committing forcible lewd act.  The information alleged count V was based on "hand to buttocks" and count VI was based on "penis to vagina."  In closing argument, the prosecutor said count V was based on "the time when he first grabbed her on the bottom" and count VI was based on "sexual intercourse."

### B.     Defendant's Sexual Intent

We find defendant's conviction in count VI for committing a forcible lewd act is supported by substantial evidence that he touched C.G.'s buttocks with the requisite sexual intent.  As we discussed in issue I, *ante*, a violation of section 288, subdivisions

(a) or (b) requires evidence that the touching was "accompanied by the *intent* to arouse or gratify the sexual desires of either the perpetrator or the victim. [Citation.]" (*In re R.C.*, *supra*, 196 Cal.App.4th at p. 749, italics in original.) Such a touching may occur over the victim's clothing, it need not be sexual in character, and it may involve " 'any part' of the victim's body." (*Martinez*, *supra*, 11 Cal.4th at p. 444.) A defendant's act of grabbing or touching a child's buttocks over her clothing may certainly constitute a lewd touching with the requisite sexual intent. (See, e.g., *People v. Jimenez* (2002) 99 Cal.App.4th 450, 455; *People v. Gilbert*, *supra*, 5 Cal.App.4th at p. 1380; *People v. Bolander* (1994) 23 Cal.App.4th 155, 161.) The relevant factors to determine intent include the nature and manner of the touching and the relationship of the parties. (*In re R.C.*, *supra*, 196 Cal.App.4th at p. 750.) Prior to this incident, defendant had sexually assaulted C.G. numerous times, beginning with his repeated acts of sodomy which started when she was five years old and continued in subsequent years, and the prior forcible lewd act of intercourse when she was 10 years old. Indeed, C.G. testified that she knew exactly what defendant intended when he touched her during this incident, and told him to stop or she would tell her parents.

In addition, there is substantial evidence that defendant's act of grabbing C.G.'s buttocks with his hands, as charged in count V, was a separate lewd act from his subsequent act of intercourse, which was the basis for count VI. "[A] separate violation of section 288 can be based on each distinct lewd act committed against the victim on the same occasion…." (*People v. Scott* (1994) 9 Cal.4th 331, 348, fn. 10.)

### C. Force or Duress

There is also substantial evidence of force to support defendant's conviction for committing a *forcible* lewd act by grabbing C.G.'s buttocks. The force required by section 288, subdivision (b) requires evidence that the perpetrator used force " 'substantially different from or substantially greater than that necessary to accomplish the lewd act itself.' [Citation.]" (*People v. Soto*, *supra*, 51 Cal.4th at p. 242.)

18.

"*According to the majority of courts, this includes acts of grabbing, holding and restraining that occur in conjunction with the lewd acts themselves.* (See, e.g., *People v. Bolander*[, *supra*,] 23 Cal.App.4th [at pp.] 160–161 … ['defendant's acts of overcoming the victim's resistance to having his pants pulled down, bending the victim over, and pulling the victim's waist towards him' constituted forcible lewd conduct]; *People v. Neel* [(1993)] 19 Cal.App.4th [1784,] 1790 … ; *People v. Babcock* [(1993)] 14 Cal.App.4th [383,] 388 [force element met where the defendant grabbed the victims' hands and made them touch his genital area].)" (*People v. Alvarez, supra*, 178 Cal.App.4th at p. 1005, italics added.)

C.G. testified that when defendant initially entered her bedroom, he did two things to her: "I felt defendant pull me up from my hips," and defendant then "grabbed" her buttocks. C.G. was laying on her stomach, and defendant could have touched or grabbed her buttocks without pulling her up in such a manner. Based on C.G.'s testimony, defendant engaged in force substantially different from that required to perform the sexual act of grabbing her buttocks when he pulled her up by her hips.

Defendant argues the act of grabbing C.G.'s buttocks was part of the force he used to commit the forcible act of sexual intercourse separately charged in count VI, instead of supporting a *separate* conviction for aggravated lewd conduct in count V for grabbing her buttocks with the requisite sexual intent. We disagree because there is evidence of a separate act of "force" or "duress" to support his conviction in count VI for aggravated lewd conduct. (§ 288, subd. (b).) " '[D]uress means' ' "a direct or implied *threat* of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." [Citations.]' [Citation.] ' "The total circumstances, including the age of the victim, and [her] relationship to defendant are factors to be considered in appraising the existence of duress." [Citation.]' [Citations.] 'Other relevant factors include threats to harm the

19.

victim, physically controlling the victim when the victim attempts to resist, and warnings to the victim that revealing the molestation would result in jeopardizing the family.' [Citations.]" (*People v. Veale* (2008) 160 Cal.App.4th 40, 46–47.)

There is overwhelming evidence of an act of "duress" to support defendant's conviction for aggravated lewd conduct in count VI, separate and apart from grabbing her buttocks:  C.G. testified defendant lowered her pants; she told him to stop or she would tell her parents; defendant replied that he would kill her family if she revealed anything; C.G. became frightened; and defendant committed the act of intercourse.

Defendant's conviction in count VI for aggravated lewd conduct was thus independently based on the duress from his threat to kill her family and his act of intercourse, it was not based on the same "force" which was the basis for grabbing her buttocks in count V, and there is substantial evidence of both force and sexual gratification to support his separate conviction in count V.

## III.    Defendant's Conviction in Count II

Based on C.G.'s testimony about the "nighttime" molestation in her bedroom, defendant was charged with count II, a violation of section 288.7, subdivision (a), and the jury convicted him of sexual intercourse with a child 10 years of age or younger in violation of that section.

Defendant contends his conviction in count II must be reversed because of variances between the allegations in the information, the instructions, the verdict form, and the trial evidence as to whether he was charged and convicted of sexual intercourse or sodomy.  As we will explain, there was no variance or confusion between the trial evidence and defendant's conviction in count II.

### A.  The Charge and the Information

Section 288.7, subdivision (a) states:

"Any person 18 years of age or older who engages in *sexual intercourse or sodomy* with a child who is 10 years of age or younger is guilty of a felony

20.

and shall be punished by imprisonment in the state prison for a term of 25 years to life." (Italics added.)

The information alleged as to count II that defendant committed "the crime of *sex/sodomy* with a child under 10" in violation of section 288.7, subdivision (a), when he engaged "in sexual intercourse *and* sodomy" with C.G. (Italics added.)

At the beginning of trial, the court read the charges to the jury and stated that defendant was charged in count II "with the crime of *sexual sodomy* with a child under 10, in violation of Penal Code *Section 299.7(a)*… [*sic*]"[6] (Italics added.)

## B. The Trial Evidence and Closing Argument

As set forth above, the evidence in support of count II was based on C.G.'s testimony about the nighttime incident in her bedroom, when defendant turned her over, lowered her clothing, muffled her screams, and performed an act of intercourse. C.G. never testified that defendant sodomized her during that incident.

In closing argument, the prosecutor explained that count II alleged the offense of "sexual intercourse" with a minor 10 years of age or younger, and that it was based on C.G.'s testimony about the first time defendant committed an act of intercourse in her bedroom and muffled her screams for help. The prosecutor further explained that count III, committing a forcible lewd act, dealt "with that same instance too," and count IV was based on when "he put his hand on her mouth."

## C. The Instructions and Verdict Form

Also as to count II, the jury was instructed with CALCRIM No. 1127, that defendant was charged with "engaging in sexual intercourse" with a child 10 years of age or younger. The People had to prove defendant "engaged in an act of sexual intercourse

---

[6] The court erroneously cited "section 299.7" instead of "section 288.7." Section 299.7 authorizes the Department of Justice to dispose of unused forensic evidence samples under certain circumstances.

21.

with C.G.," and "sexual intercourse" meant "any penetration, no matter how slight, of the vagina or genitalia by the penis."

According to the verdict form, the jury found defendant guilty "as charged in Count 2 of the Information, *as to the crime of sexual intercourse* with a child 10 years of age or younger in violation of Penal Code section 288.7(a), a felony, against C.G., to wit: penis in vagina." (Italics added.)

## D. <u>Analysis</u>

Defendant contends his conviction in count II must be reversed because of variances between the charge and his conviction. The alleged variance was based on the language of the information and how the court read the charge. Section 288.7, subdivision (a) may be violated by the commission of "sexual intercourse or sodomy." The information alleged in count II that defendant violated section 288.7, subdivision, but defined the offense as "sex/sodomy." When the court read the charges to the jury, it stated that count II alleged "the crime of *sexual sodomy* with a child under 10, in violation of Penal Code *Section 299.7(a)* [*sic*] .…" (Italics added.)

Defendant has "forfeited his right to object to an alleged variance between the pleading and the proof by failing to raise the objection in the trial court. [Citation.]" (*People v. Maury* (2003) 30 Cal.4th 342, 427.) More importantly, defendant has failed to show the variance was of such a substantial character as to have misled him in the preparation of his defense. (*Id*. at pp. 427–428.)

" 'A verdict is to be given a reasonable intendment and be construed in light of the issues submitted to the jury and the instructions of the court.' [Citations.]" (*People v. Mackabee* (1989) 214 Cal.App.3d 1250, 1256.) "The form of a verdict is immaterial provided the intention to convict of the crime charged is unmistakably expressed. [Citation.]" (*Ibid.;* see also *People v. Jones* (1997) 58 Cal.App.4th 693, 710; *People v. Camacho* (2009) 171 Cal.App.4th 1269, 1272; *People v. Paul* (1998) 18 Cal.4th 698, 703.) "[T]echnical defects in a verdict may be disregarded if the jury's intent to convict

of a specified offense within the charges is unmistakably clear, and the accused's substantial rights suffered no prejudice. [Citations.]" (*People v. Webster* (1991) 54 Cal.3d 411, 447, fn. omitted; in accord, see *People v. Jones, supra,* at p. 710; and *People v. Camacho, supra,* at pp. 1272–1273.)

The jury's intent to convict defendant of "sexual intercourse" with a child 10 years of age or younger, in violation of section 288.7, subdivision (a), was unmistakable. The People clearly elected that count II was based on the nighttime incident in C.G.'s bedroom, and C.G. testified that defendant performed an act of intercourse as he muffled her cries for help. C.G. never described an act of sodomy during this incident.

The jury was instructed that count II was based on defendant's act of sexual intercourse, and the verdict form similarly stated that defendant was convicted in count II of performing an act of sexual intercourse in violation of section 288.7, subdivision (a).

It is important to note that defendant was separately charged with count I, commission of a forcible lewd act, based on C.G.'s testimony that he entered her bedroom, lowered her swimsuit, and sodomized her when she was five or six years old, and that he committed similar acts for several years thereafter. In closing argument, the prosecutor clearly elected that count I was based on C.G.'s description of the incident when she was five years old, and defendant lowered her swim trunks and sodomized her. The verdict form for count I also clarified that his conviction for committing a forcible lewd act was based on sodomy and not intercourse. There was thus no confusion between the evidence and the verdicts for counts I and II.

### IV. Defendant's Convictions for Counts II and III

As we have already explained, C.G. testified about the nighttime molestation in her bedroom, when defendant muffled her cries for help and committed an act of intercourse. Defendant was charged and convicted of count II, sexual intercourse with a child 10 years of age or younger, and count III, commission of a forcible lewd act based

23.

on the same act of intercourse. The court sentenced him to 25 years to life for count II, but stayed the eight-year determinate term for count III pursuant to section 654.

Defendant asserts that he could not be convicted of both counts II and III based on the same act of sexual intercourse, and that his conviction and sentence of 25 years to life in count II must be reversed.

### A. Sections 954 and 654

"In general, a person may be *convicted* of, although not *punished* for, more than one crime arising out of the same act or course of conduct. 'In California, a single act or course of conduct by a defendant can lead to convictions "of *any number* of the offenses charged." [Citations.]' [Citation.] Section 954 generally permits multiple conviction. Section 654 is its counterpart concerning punishment. It prohibits multiple punishment for the same 'act or omission.' When section 954 permits multiple conviction, but section 654 prohibits multiple punishment, the trial court must stay execution of sentence on the convictions for which multiple punishment is prohibited. [Citations.]" (*People v. Reed* (2006) 38 Cal.4th 1224, 1226–1227 (*Reed*).)

"A judicially created exception to the general rule permitting multiple conviction 'prohibits multiple convictions based on necessarily included offenses.' [Citation.] '[I]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former.' [Citation.]" (*Reed*, *supra*, 38 Cal.4th at p. 1227.)

"We have applied two tests in determining whether an uncharged offense is necessarily included within a charged offense: the 'elements' test and the 'accusatory pleading' test. Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former. Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is

necessarily included in the former. [Citation.]" (*Reed*, *supra*, 38 Cal.4th at pp. 1227–1228.)

"In deciding whether multiple conviction is proper, a court should consider only the statutory elements. '[O]nly a statutorily lesser included offense is subject to the bar against multiple convictions in the same proceeding. An offense that may be a lesser included offense because of the specific nature of the accusatory pleading is not subject to the same bar.' [Citation.]" (*Reed*, *supra*, 38 Cal.4th at p. 1229.)

## B. <u>Analysis</u>

Defendant's convictions for counts II and III, based on the same act of sexual intercourse, are permitted under section 954 unless the multiple convictions are lesser included offenses under the statutory elements test.

In count III, defendant was charged and convicted of violating section 288, subdivision (b)(1), which states:

> "Any person who commits an act described in subdivision (a) by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, is guilty of a felony and shall be punished by imprisonment in the state prison for 5, 8, or 10 years."

A violation of section 288, subdivision (b) is a specific intent offense, requires commission of a lewd or lascivious act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person. Such an act may occur through the victim's clothing, it can involve any part of the victim's body, and touching of a sexual organ is not required. (*People v. Raley*, *supra*, 2 Cal.4th at p. 907.)

In count II, defendant was charged and convicted in count II of violating section 288.7, subdivision (a), which states:

> "Any person 18 years of age or older who engages in sexual intercourse or sodomy with a child who is 10 years of age or younger is guilty of a felony

and shall be punished by imprisonment in the state prison for a term of 25 years to life."

In contrast to section 288, sexual intercourse or penetration with a sexual organ, as defined under section 288.7, subdivision (a), is a general intent crime, it requires penetration with a sexual organ, and it can be committed without the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of the defendant or the child.

Section 288.7 requires an act of sexual intercourse. However, a defendant can perform a lewd act on a minor in violation of section 288, subdivision (b) short of intercourse or even touching a sexual organ. Since a violation of section 288.7, subdivision (a) may be committed without violating section 288, subdivision (b), defendant was not convicted of greater and lesser included offenses in counts II and III. (See, e.g., *People v. Pearson* (1986) 42 Cal.3d 351, 355–356.) In addition, the court properly stayed the term imposed for count III as required in this situation pursuant to section 654.

## V. <u>The Sentences for Counts V and VI</u>

Defendant was convicted of two counts of aggravated lewd conduct based on the homework incident, where he grabbed C.G.'s buttocks (count V) and then performed an act of sexual intercourse (count VI). The court imposed an eight-year term for count V but stayed the term for count VI.

The People assert the court imposed an unauthorized sentence when it stayed the term imposed for count VI. The People have not filed an appeal, but the improper application of section 654 results in an unauthorized sentence which may be corrected on appeal. (*People v. Perez* (1979) 23 Cal.3d 545, 549–550, fn. 3; *People v. Alford* (2010) 180 Cal.App.4th 1463, 1468–1469, 1473.)

## A. Section 654 and Section 667.6

"Section 654 provides that '[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.'  The section 'applies when there is a course of conduct which violates more than one statute but constitutes an indivisible transaction.'  [Citation.]  Generally, whether a course of conduct is a divisible transaction depends on the intent and objective of the actor:  'If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.'  [Citation.]" (*People v. Alvarez*, *supra*, 178 Cal.App.4th at p. 1006.)

"Violent sex crimes are treated differently.  The Legislature enacted section 667.6 in 1979 to significantly increase prison terms for persons convicted of certain violent sex offenses.  [Citation.]" (*People v. Pelayo* (1999) 69 Cal.App.4th 115, 123.)

The sentencing provisions of section 667.6 apply to a conviction for the commission of a lewd or lascivious act on a child under the age of 14 years with force or duress, in violation of section 288, subdivision (b).  (§ 667.6, subd. (e)(5).)

"Section 667.6, subdivision (c) provides that if a person is convicted of a violent sex offense *against a single victim on one occasion*, the trial court may, *in its discretion*, impose a full, separate and consecutive sentence for such an offense.  Alternatively, it may sentence the defendant more leniently in the manner prescribed by section 1170.1. [Citations.]  Subdivision (d) removes the trial court's discretion to impose a more lenient sentence under section 1170.1 where two or more violent sex crimes are committed against more than one victim *or where they are committed against the same victim on more than one occasion*.  In such an instance, the defendant must serve a full, separate and consecutive sentence for each conviction of an enumerated violent sex offense. [Ciations.]" (*People v. Pelayo*, *supra*, 69 Cal.App.4th at pp. 123–124, italics added.)

27.

### B. Background

At the sentencing hearing, the court was concerned whether the sentences for counts V and VI were subject to section 654. The prosecutor argued the court should impose fully consecutive terms for those counts.

> "For the record, so that way there's no confusion about this, the People's position after reviewing this case is that the counts five and six occurred on the same occasion. They are forcible counts. Under Penal Code section 667.6 it does allow the Court *discretion* to run those full force consecutive. So I just wanted to make that clear, so there's no issue on appeal. [¶] If they had occurred – if those two counts had occurred on separate occasions, then the Court would be mandated to run it full force consecutive. *Because they were the same, it is discretionary*." (Italics added.)

The court agreed consecutive sentences were discretionary for counts V and VI. The prosecutor argued the court should exercise its discretion because "the defendant did not have to put his hand on the victim's buttocks" when he committed the act of sexual intercourse, the two forcible lewd acts were separate offenses, and section 654 did not apply to counts V and VI.

The court decided to stay one of the terms instead of imposing consecutive sentences for counts V and VI:

> "I … find that count six is [subject to section] 654 to count five, committed in the same course of conduct at the same time. And it is my intention to sentence him to the aggregate term of eight years in count six, concurrent to the sentence in count five."

The court sentenced defendant to 25 years to life for count II, and fully consecutive determinate upper terms of eight years for counts IV, I and V. The court decided to stay the terms imposed for counts III and VI pursuant to section 654.

### C. Analysis

On appeal, the People assert the court imposed an unauthorized sentence when it declined to impose consecutive terms for counts V and VI and applied section 654. However, the superior court was clearly aware that it had discretion under section 667.6

28.

to impose consecutive terms.  Indeed, even the probation report stated that the court had discretion under section 667.6, subdivision (c) whether to impose consecutive terms or apply section 654, and that counts V and VI occurred "very closely in time and place, rather than on separate occasions."  The court considered the prosecutor's argument and decided to exercise its discretion not to impose consecutive terms, and to stay the determinate term imposed for count VI.  The court was not obliged to impose mandatory consecutive terms, and we cannot say it abused its discretion.

## **DISPOSITION**

Defendant's conviction for the lesser included offense in count IV, commission of a lewd or lascivious act without force by placing his hand over C.G.'s mouth, in violation of section 288, subdivision (a), is reversed for insufficient evidence, and the consecutive term of eight years imposed for that conviction is stricken.  In all other respects, the judgment is affirmed.

_____

Poochigian, J.

WE CONCUR

_____

Cornell, Acting P.J.

_____

Kane, J.

29.